IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID NEWKIRK,<br><br>     Petitioner,<br><br>vs.<br><br>MICHAEL CAPRA, Superintendent, Sing Sing Correctional Facility,<br><br>     Respondent. | No. 9:12-cv-00386-JKS<br><br>MEMORANDUM DECISION |

  David Newkirk, a New York state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Newkirk is currently in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Sing Sing Correctional Facility. Respondent has answered, and Newkirk has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  On August 17, 2005, Newkirk was charged with three counts of rape in the first degree, in violation of New York Penal Law § 130.35(1), and three counts of sexual abuse in the first degree, in violation of Penal Law § 130.65(1). The charges were based upon allegations that, on three dates in May 2005, Newkirk raped his stepdaughter and sexually abused her by rubbing his penis between her legs while using forcible compulsion.

Prior to trial, the prosecution moved pursuant to *Molineux*, *Ventimiglia*, and *Sandoval*[1] to introduce evidence alleging that Newkirk had been raping and sexually abusing the victim since she had been in the second or third grade, that the victim believed the baby she bore in July 2004 was Newkirk's, that Newkirk had placed recording devices in the victim's bedroom, and that he had made a Polaroid photo of the victim's naked buttocks. The trial court denied the motion, concluding:

> The Court finds that it is not highly probative and that the danger of unfair prejudice far outweighs the need for such evidence. In fact, to admit that evidence, in the Court's view, there is no limiting instruction which could adequately protect the defendant from the juror's abhorrent rage relative to alleged conduct which could have been charged by the People and would have obviated the hearing.
> . . .
> So the Decision and Order of the Court is that the defendant is charged with six distinct crimes. That motive, intent, forcible compulsion, everything else is readily apparent [from] the nature of the acts itself, and that the danger of unfair prejudice to the defendant is so great that it's frankly the Court's opinion that those acts are so prejudicial that it would virtually ensure the defendant's conviction on the instant crimes, whether he committed them or not.

The trial court denied the prosecution's *Sandoval* application for the same reasons, and the case then proceeded to jury selection and opening arguments.

The prosecution presented, among other evidence, testimony from the victim, testimony from the sexual assault nurse examiner regarding vaginal tearing, and blood evidence that had been found on the victim's sheets and mattress pad.

---

[1] *People v. Ventimiglia*, 420 N.E.2d 59 (N.Y. 1981); *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974); *People v. Molineux*, 61 N.E. 286 (N.Y. 1901). These terms are shorthand references to the New York procedure for determining in advance whether evidence of prior crimes is admissible for impeachment purposes in the event the defendant testifies (*Sandoval*), or probative for the purpose of showing, *e.g.*, 1) motive, 2) intent, 3) absence of mistake or accident, 4) common scheme or plan, or 5) identity, and for determining whether that probative value outweighs the prejudicial effect (*Ventimiglia*/*Molineux*).

On direct examination, the prosecution had the following exchange with the victim:

Q       Now, let me ask you, during the course of each of these incidents that you described on May 2nd, May 4th, and May 6th, did you scream and yell?

A       No.

Q       Did you scream and yell after he got off you and left the room?

A       No.

Q       How come?

A       Because it was something that always happened.

Q       Let me ask you, did you, how come you didn't tell your mom in the days after that up until that time that the police came?

A       Because it's been going on –

Defense counsel then approached the bench and moved for a mistrial on the grounds that the victim's testimony violated the court's *Molineux/Ventimiglia* ruling and that no curative instruction would be sufficient to cure the prejudice that would flow from any inference that the jury might make regarding prior acts. The trial court agreed that the victim had violated the ruling but reserved ruling on the defense's motion for a mistrial and invited defense counsel to move to strike the testimony or request a curative instruction. Defense counsel moved to strike the victim's last two answers, which the court immediately granted. On cross-examination, the victim admitted that twice when she was interviewed about the events she responded that Newkirk's penis never went into her vagina on any of the three dates.

The sexual assault nurse examiner testified that the medical team performing the victim's vaginal physical exam was "looking for injuries such as bruising, tearing, discharge, [and] blood" but that she did not believe they had any findings. The prosecution then asked, "Now

3

you talked about tearing. What specifically does that mean?" Defense counsel objected, arguing that "[s]he just said it wasn't present. I don't see the relevance in describing what that means." The trial court overruled the objection, and the nurse testified, "Tearing is a form of laceration or a cut injury that can happen with sexual assault."

The prosecution also introduced the testimony of a forensic scientist who testified about the contents of certain biological evidence bags and the tests she performed on them, under which she determined that the bedding and underwear within "were positive for either blood or seminal fluid." Prior to trial, defense counsel had argued that the admission of blood testimony would be highly prejudicial because it would "scream[] to the jury that . . . there was some kind of injury based on whatever sexual acts did or didn't occur" and that the prosecution should be barred from introducing such evidence because testimony regarding DNA evidence of seminal fluid and semen would be "more than sufficient" in this case. The trial court ruled that the evidence was admissible because "there was allegedly a mixture of blood and semen on the underwear and sheets, [and] that's all inextricably intertwined, [and] there's no rational reason to wash that out of [Newkirk's] case."

At the close of the prosecution's case, the defense moved pursuant to New York Criminal Procedure Law ("CPL") § 290.10 for a trial order dismissing the three rape charges, arguing that the prosecution had not met its burden with respect to the required element of penetration. The trial court denied the motion.

During its summation, the prosecution referred to the fact that the victim testified that she slept in a locked bedroom and asked, "Why is it locked? These things don't happen in a vaccum. There's dynamics, there's interactions that happen every day between people in a family and this

is not something that just out of the blue occurs." After summation, defense counsel again renewed the motion for a mistrial, contending that the prosecution's statements during summation were "improper and call the jury's attention to answers that were made during [the victim's] testimony regarding potential prior acts of Mr. Newkirk that were specifically excluded by your Honor." The court denied the motion for a mistrial based on the prosecutor's summation.

The jury returned a verdict of guilty of three counts of rape in the first degree and three counts of sexual abuse in the first degree. Defense counsel renewed the motion for a mistrial and/or to vacate the verdict of the jury and for a new trial pursuant to CPL § 330.30(1) on the grounds that the prosecution violated the court's *Molineux/Ventimiglia* ruling and moved for a trial order of dismissal and/or a new trial on the grounds that there was insufficient evidence as a matter of law to establish penetration, an element of rape in the first degree.

At sentencing, the trial court stated that it was "troubl[ed]" by the witness's violation of the *Molineux/Ventimiglia* ruling and that it believed that it was incorrect to reserve decision on the mistrial motion. The court ultimately denied the mistrial motion, concluding that, because it reserved decision on the motion until the conclusion of proceedings, it was within the province of the Appellate Division to determine whether a mistrial should have been granted.

The trial court then granted the defense's motion pursuant to CPL § 290.10 for a trial order dismissing the counts of rape in the first degree on the grounds that the evidence of the element of penetration was insufficient as a matter of law. The trial court sentenced Newkirk to a determinate sentence of 3½ years on each count of sexual abuse in the first degree, to be served consecutively for a total term of 10½ years.

5

Through counsel, Newkirk directly appealed his conviction, arguing that: 1) the trial court abused its discretion and deprived him of a fair trial by denying his motion for a mistrial based on the prosecution's violation of the *Molineux* ruling; 2) the evidence of forcible compulsion was insufficient to support the sexual abuse convictions; 3) the court erred in admitting evidence regarding the blood and vaginal tearing; 4) the victim's testimony was not credible and insufficient to establish sexual abuse; and 5) the sentence imposed was excessive. The People opposed Newkirk's claim and also filed a cross-appeal alleging that: 1) the trial court erred in granting Newkirk's motion to dismiss the rape counts or, in the alternative, the court erred in failing to reduce the counts to attempted rape; and 2) the trial court abused its discretion in precluding the prosecution from introducing evidence of Newkirk's prior bad acts.

On July 15, 2010, the Appellate Division affirmed Newkirk's conviction in a reasoned opinion. The appellate court additionally held that, although the evidence of the completed rape was insufficient, the evidence was sufficient to establish attempted rape. The court thus reinstated the rape convictions and reduced them to attempted rape.

By letters dated August 5, 2010, September 14, 2010, and October 19, 2010, Newkirk sought leave to appeal on all issues raised before Appellate Division. On March 1, 2011, the Court of Appeals denied Newkirk's applications for leave to appeal to that court.

Newkirk timely filed a counseled Petition for a Writ of Habeas Corpus to this Court on March 1, 2012.

## II. GROUNDS RAISED

In his counseled Petition before this Court, Newkirk raises three grounds for habeas relief. First, he argues that the trial court should have granted Newkirk a mistrial due to the

prosecution's violations of the court's *Molineux* ruling. Newkirk next argues that he was deprived of a fair trial when the trial court erroneously admitted evidence of blood found on the victim's sheets and mattresses and testimony concerning vaginal tearing. Finally, Newkirk contends that the Appellate Division denied him due process because it was without jurisdiction to reduce rather than eliminate the rape convictions from rape in the first degree to attempted rape because the prosecution did not ask for this reduction at trial and therefore waived its right to argue it on appeal.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.     Exhaustion

Respondent contends that Newkirk has failed to exhaust his claims because, although he raised them on direct appeal of his conviction, he did not identify them as arising under the United States Constitution and cited no federal cases in support of his claims. By letter dated January 21, 2014, counsel for Newkirk directly requested permission of this Court to submit a supplemental memorandum of law addressing the issue of exhaustion of claims in the state courts. Docket No. 16. The Court treated the letter as a motion, which it granted. Docket No. 17. Newkirk filed a supplemental brief on February 24, 2014. Docket No. 20.

This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners'

federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66.

However, a petitioner is not required to cite "book and verse on the federal constitution" in order for a federal claim to be "fairly presented." *Picard v. Connor*, 404 U.S. 270, 278 (1971) (citation omitted). Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the "substantial equivalent" of the habeas claim. *Id.* "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc). A petitioner may fairly present his federal claim to the state court through "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 194.

While Newkirk did not cite to any federal law, federal case, or constitutional provision on direct appeal, he did, however, rely on state court cases that generally discuss the parameters of due process and a defendant's right to a fair trial. As noted in *Daye*, a petitioner can inform the state court of his claim by citing constitutional precedent. *Id.* "Constitutional precedent" is not limited to federal cases, but encompasses state cases that "employ[] constitutional analysis." *Id.* at 195. Newkirk also framed his arguments before the state courts in a manner that called to mind his federal constitutional right to a fair trial.

9

An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). This Court additionally presumes that a relevant state-court decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991). Having considered the supplemental brief, this Court declines to decide the claims solely on exhaustion grounds and will instead reach the merits of the case as discussed below.

B.     Merits

    1.     Denial of Mistrial Motion (Claim 1)

Newkirk first argues that the witness's violation of the trial court's *Molineux* ruling "deprived [him] of a fair trial and had a substantial and injurious effect on the jury's consideration of the rape and sexual abuse charges" such that the trial court should have granted him a mistrial.

The Appellate Division denied this claim on direct appeal of his conviction, concluding:

> [D]espite the fact that the two responses by the victim were improper, viewing the comments in light of the entire testimony and considering the overwhelming evidence of [Newkirk's] guilt, we conclude that the impropriety was not so egregious as to deny [him] a fair trial. Additionally, although [Newkirk] declined Supreme Court's offer of a prompt curative instruction, the court struck the responses and later instructed the jury to disregard all stricken testimony, alleviating any prejudice to [Newkirk]. Regarding the People's remarks during summation, inasmuch as "[r]eversal of a conviction for prosecutorial misconduct is warranted only where a defendant has suffered substantial prejudice such that he [or she] was deprived of due process of law," we find that, in the context of the trial, the comments concerning the dynamics of the household did not expressly reference any prior crimes or bad acts by [Newkirk] and were not so substantially prejudicial as to deprive [him] of a fair trial.

As a general rule, the drastic remedy of a mistrial should not be granted where the prejudice from improperly admitted evidence is not substantial and where curative instructions

can mitigate the harm. *See generally United States v. Nixon*, 779 F.2d 126, 133 (2d Cir. 1985); *United States v. Mussaleen*, 35 F.3d 692, 695 (2d Cir. 1994).

In this case, defense counsel moved to strike the answers at issue and reserved his right for a curative instruction. The court instructed the jury, "The witness's last two answers to the extent that the jury may have heard them are stricken from the record." *Id.* at 47-48. The jury is presumed to obey the court's instructions. *See, e.g., Zafiro v. United States*, 506 U.S. 534, 540-41 (1993) ("juries are presumed to follow their instructions") (quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Whitten*, 610 F.3d 168, 191 (2d Cir. 2010) ("We presume that juries follow instructions."); *United States v. Sabhnani*, 599 F.3d 215, 240 (2d Cir. 2010).

The court also offered to give curative instructions about the victim's improper testimony. Defense counsel, however, refused the instruction, fearing that "a curative instruction merely highlights what was said." Curative instructions have been found to militate against a finding of constitutional error. *See, e.g., Dowling v. United States*, 493 U.S. 342, 353 (1990) (admission of evidence did not violate "fundamental fairness" standard, "[e]specially in light of the limiting instructions provided by the trial judge"); *United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008) ("Where an inadmissible statement is followed by a curative instruction, the court must assume 'that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, . . . and a strong likelihood that the effect of the evidence would be devastating to the defendant.'") (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)).

As the trial court recognized, the issue presented before this Court is certainly "troubling," particularly given that the trial court, in making its *Molineux* ruling, acknowledged that "there is no limiting instruction which could adequately protect [Newkirk] from the juror's abhorrent rage relative to [the] alleged conduct" and that "those acts are so prejudicial that it would virtually ensure the defendant's conviction on the instant crimes, whether he committed them or not." On balance, however, as the Appellate Division found, the strong evidence of Newkirk's guilt renders it unlikely that the victim's testimony deprived him of a fundamentally fair trial, particularly given that the jury was instructed to disregard the testimony and defense counsel was offered the opportunity to propose a curative instruction. *See, e.g., Reyes v. Ercole*, No. 08-CV-4749, 2010 WL 2243360, at *10 (E.D.N.Y. June 1, 2010) (petitioner was not deprived of a fundamentally fair trial "given the strong, indeed overwhelming, evidence against him"); *Ayala v. Portuondo*, 75 F. Supp. 2d 194, 196 (S.D.N.Y. 1999) ("In view of the overwhelming evidence of [petitioner]'s guilt, this [uncharged crimes] evidence cannot even if it had been erroneously admitted, be said to have denied [petitioner] a fair trial.").

In any event, even assuming that the Appellate Division was incorrect, this Court cannot say that its decision was an unreasonable application of Supreme Court precedent such as to allow habeas relief under the AEDPA. *See, e.g., Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes."); *Allaway v. McGinnis*, 301 F. Supp. 2d 297,

300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes under state evidentiary laws can constitute a federal due process violation"). Accordingly, this Court must conclude that Newkirk is not entitled to habeas relief on this claim.

2. Evidentiary Rulings (Claim 2)

Newkirk next argues that "the evidence of blood found on [the victim's] sheets and mattress [and] the testimony concerning vaginal tearing . . . warrants that the writ of habeas corpus should be granted because the errors deprived [Newkirk] of a fair trial and had a substantial and injurious effect on the jury's verdict on the rape and sexual abuse charges."

The Appellate Division also denied this claim on direct appeal of his conviction:

> Even if [Newkirk] was correct in his contention that the admission of the blood evidence was error, in light of the fact that there was no evidence presented that the victim was physically injured during the incidents or as to whose blood it was or when it was left there, we find that "there is no view of the evidence which would suggest a significant probability that [Newkirk] would have been acquitted but for the wrongful admission of this evidence." We reach a similar conclusion as to [Newkirk's] challenge to the admission of testimony from the sexual assault nurse examiner who treated the victim after the alleged incidents. Insofar as the nurse testified that there was no evidence of injury to the victim, including vaginal tearing, the admission of her testimony concerning vaginal tearing in general and the use of diagrams of female genitalia did not, in our view, constitute reversible error.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). The Supreme Court has further made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v.*

13

*DeChristoforo*, 416 U.S. 637, 643 (1974)). A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling bears the burden of establishing that the evidentiary error deprived the petitioner of due process because it was so pervasive that it denied the petitioner a fundamentally fair trial. *See Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

Newkirk has not and cannot meet this standard. Even assuming that the trial court erred in its admitting the challenged evidence, Newkirk certainly cannot show fundamental unfairness given that, as the Appellate Division recognized, "there was no evidence presented that the victim was physically injured during the incidents or as to whose blood it was or when it was left there" and "the nurse testified that there was no evidence of injury to the victim, including vaginal tearing." Newkirk consequently cannot prevail on either of his evidentiary error claims.

Newkirk also appears to argue that, even if the errors are not individually sufficient to warrant habeas relief, the errors viewed "cumulatively" with the witness's *Molineux* ruling violation should compel this Court to grant relief.

"In limited circumstances, cumulative errors may "serve as the basis for habeas corpus relief." *Brumfield v. Stinson*, 297 F. Supp. 2d 607, 621 (W.D.N.Y. 2003) (citation omitted). In order for a federal habeas court to find that cumulative errors justify habeas relief, "the alleged individual errors a petitioner seeks to aggregate [must be actual] *errors*." *Id.* (citing *Joyner v. Miller*, No. 01–Civ.–2157, 2002 WL 1023141, at *13 (S.D.N.Y. Jan. 7, 2002) (collecting cases)). Further, the petitioner must show that the errors are "'so prejudicial that they rendered petitioner's trial . . . fundamentally unfair.'" *Id.* (citation omitted). For the same reasons that the individual errors fail to show fundamental unfairness, the errors viewed cumulatively fail to

demonstrate fundamental unfairness, and Newkirk cannot prevail on his cumulative error claim either.

      3.      Reduction of Rape Convictions (Claim 3)

Finally, Newkirk argues that his convictions for attempted rape should be vacated because the Appellate Division "had no jurisdiction to hear the People's appeal, and imposition of the convictions for the lesser included offenses of attempted rape is based on an unreasonable view of the evidence, and deprived [Newkirk] of a jury determination on the element of specific intent." However, none of these arguments warrant the provision of habeas relief.

First, Newkirk appears to be mistaken that the Appellate Division had no jurisdiction to hear the People's appeal. The jurisdiction of New York's intermediate appellate courts is broad and extends even to errors not protested at trial. *See* N.Y. CRIM. PROC. LAW § 470.15(1) ("Upon an appeal to an intermediate appellate court from a judgment, sentence or order of a criminal court, such intermediate appellate court may consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant."); *see also People v. Cona*, 399 N.E.2d 1167, 1169 (N.Y. 1979). Appellate counsel may "raise an unpreserved issue in the hope of convincing the appellate court to review the unpreserved issue in the exercise of its interest of justice jurisdiction." *Sutherland v. Senkowski*, 02-CV-3833, 2003 WL 22953066, at *12 (E.D.N.Y. Oct. 17, 2003). The Appellate Division's interest of justice discretion, however, is purely a matter of state law. *Gayle v. LaFevre*, 613 F.2d 21, 22 n.3 (2d Cir. 1980) ("Under section 470.15(3) of the [CPL], the state intermediate appellate court may reverse or modify a judgment as a [m]atter of discretion in the interest of justice . . . . Such discretionary determinations are apparently not

dictated by constitutional considerations, but rather constitute exercises of the appellate court's supervisory powers."). Again, state law issues are not cognizable on federal habeas review. *Swarthout*, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68.

Second, Newkirk's argument that the conviction for attempted rape is supported by legally sufficient evidence is also without merit. Newkirk misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted). It is through this lens that this Court must view an insufficiency of the evidence claim.

In this case, the victim testified that Newkirk entered her locked room, removed her clothing, and got on top of her. The victim's testimony was also corroborated by DNA evidence that had been recovered from semen stains on the victim's sheets and underwear. Newkirk's arguments with regard to the legal sufficiency of the evidence claim are nothing more than an attack on the testimony of the victim and the DNA evidence. But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Newkirk bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The

record does not compel the conclusion that no rational trier of fact could have found proof that Newkirk was guilty of these crimes, especially considering the double deference owed under *Jackson* and AEDPA.

Third, Newkirk's contention that the Appellate Division's ruling deprived him of a jury determination on the element of specific intent also must fail. Newkirk appears to argue that, because attempted rape in the first degree under Penal Law § 110.00 requires an intent that is not essential for the completed crime of rape in the first degree under Penal Law § 130.35(3), the attempted rape is not theoretically a lesser included offense. A similar argument was rejected by the Appellate Division. *See Matter of Brion H.*, 555 N.Y.S.2d 881, 883 (N.Y. App. Div. 1990). Moreover, CPL § 1.20(37) provides that, "[i]n any case in which it is legally possible to attempt to commit a crime, an attempt to commit such crime constitutes a lesser included offense with respect thereto." Under this statutory definition, attempts which are legally possible of commission are lesser included offenses of the substantive crime. *See People v. Williams*, 465 N.Y.S.2d 648, 652-53 (N.Y. Crim. Ct. 1983). The statute therefore renders Newkirk's argument meritless. Newkirk is therefore not entitled to relief on any argument advanced in his final claim.

## V. CONCLUSION

Newkirk is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court grants a Certificate of Appealability solely to his claim that the trial court erred in denying his motion for a mistrial after the victim

violated the court's *Molineux* ruling. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 21, 2014.

                                                                                    /s/ James K. Singleton, Jr.
                                                                        JAMES K. SINGLETON, JR.
                                                          Senior United States District Judge